UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| A.J. DWOSKIN & ASSOCIATES, INC., | ) | CASE NO.:  1:25-cv-00210 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| CORPORATE WINGS, LLC, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

Before the Court is Defendant Corporate Wings, LLC's Motion for Partial Dismissal pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. 6.)  Plaintiff opposed the motion (Doc. 8), and Defendant replied (Doc. 10).  For the reasons stated herein, Defendant's Motion for Partial Dismissal is DENIED.

I.  **BACKGROUND**

  A.  **Factual Allegations**

On July 8, 2021, A.J. Dwoskin & Associates ("Dwoskin") entered into an Aircraft Management Agreement ("Agreement") with Corporate Wings, LLC ("Corporate Wings") that allowed Corporate Wings to schedule, maintain, and operate Dwoskin's Hawker Beechcraft Model 400A ("Aircraft"). [1]  (Doc. 1 at ¶ 1.)  The Agreement was effective for one year, subject to automatic one-year renewals until either party provided a written notice of termination.  (Doc. 1-3 at 17.)[2]  Corporate Wings acted as Dwoskin's agent with respect to "the aircraft management

---

[1] In reviewing a motion to dismiss, well-pleaded factual allegations are accepted as true.  *See Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

[2] For ease and consistency, briefing citations reflect the electronically stamped CM/ECF document and PageID# rather than any internal pagination.  Citations to the Complaint are to the

services identified in this Agreement." (*Id.*)  The services included: scheduling charter flights in cooperation with Dwoskin and in consideration of Dwoskin's intended use of the Aircraft (*id.* at 19); causing all charter flights to be operated by Flight Options, LLC ("Flight Options") (*id.* at 20); and causing its affiliate Sentient Jet, LLC ("Sentient") "to make available to [Dwoskin] the opportunity to enter into a [Guaranteed Revenue Program] Agreement with Sentient, pursuant to which Sentient would guarantee use of the [A]ircraft for 250 flight hours per year."  (*Id.* at 22.)  The Agreement also contained an Ohio choice-of-law provision.  (*Id.* at 21.)

Pursuant to the Agreement, Corporate Wings would provide qualified personnel to fly, maintain, and schedule Dwoskin's Aircraft, with Dwoskin maintaining an option to enter into a Guaranteed Revenue Program Agreement ("GRP Agreement") with Sentient for a minimum of 250 flight hours on the Aircraft.  (Doc. 1 at ¶ 5; Doc. 1-3 at 22.)  At the top of the Agreement, outside of the terms outlining a possible GRP Agreement with Sentient, the Agreement specified a charter rate of $2,800 per flight hour "based on a guaranteed minimum of 250 hours annually."  (Doc. 1-3 at 17.)  The documents submitted with Dwoskin's Complaint do not include a GRP Agreement initiated under these terms.  (Doc. 1-7 at 34-36.)

In or around May 2022, ten months into the Agreement, one of two dedicated pilots resigned.  (Doc. 1 at ¶ 19.)  The second pilot later resigned as well.  (*Id.*)  Both pilots were employed by Corporate Wings.  (*Id.* at ¶¶ 16, 19.)  With both pilots resigning, Corporate Wings did not have qualified pilots.  The Aircraft was not chartered for a period of 250 hours in 2022.  (*Id.* at ¶ 21.)  In a later email between Dwoskin and Elizabeth Ricci ("Ricci"), Corporate Wings' CEO, Ricci stated the Aircraft only flew 135 hours in 2022.  (Doc. 1-5 at 26.)

---

internal paragraphs.

On February 21, 2023, Steven Lee, Corporate Wings' Vice President of Sales and Marketing, emailed Dwoskin to propose changes to the Agreement that would boost Dwoskin's revenue and annual flight hours.  (Doc. 1-4 at 24.)  These changes included increasing the charter rate to $3,150 per hour; recruitment of two new full-time pilots; and Corporate Wings' agreement to work with Sentient to "procure a GRP Agreement for the Aircraft."  (*Id*.)  Lee also proposed "[g]uaranteed hours would be referenced under the terms of the GRP [A]greement itself.  Guaranteed annual charter hours have been removed from the management agreement."  (*Id.*)

After this email, Corporate Wings proposed an addendum to the Agreement.  (Doc. 1 at ¶ 30; Doc. 1-6 at 31.)  In the addendum, the charter rate would be "$2,800 per hour (No guarantee of annual charter hours)" and the "6th bullet" under the additional terms section of the Agreement would be amended to read "Corporate Wings will use commercially reasonable efforts to procure a GRP agreement for the aircraft with Sentient Jet subject to owners [sic] approval of relevant terms."  (Doc. 1-6 at 31-32.)  In the Agreement, this bullet gave Dwoskin the opportunity to enter into a GRP Agreement with Sentient that would "guarantee use of the aircraft for 250 flight hours."  (Doc. 1-3 at 22.)  Dwoskin did not agree to the addendum.  (Doc. 8 at 68.)

Around the same time Corporate Wings proposed the addendum, the Aircraft was committed to a GRP Agreement between Flight Options and Sentient.  (Doc. 1 at ¶ 35; Doc. 1-7 at 34.)  If Flight Options made the Aircraft available for a "minimum of one-seven (7) consecutive-day period per month," Sentient would guarantee "2 flight hours per day per block averaged for the Effective Period."  (Doc. 1-7 at 34.)  This would guarantee at least 168 hours flown on the Aircraft per year.  (Doc. 1 at ¶ 39; Doc. 1-5 at 26.)  If pilots were not available to

fly the Aircraft when it was scheduled for Sentient, the overall guaranteed hours in the GRP Agreement were adjusted. (Doc. 1-7 at 33-34.)

With a GRP Agreement in place, Corporate Wings was still unable to adequately train and staff pilots to fly the Aircraft, making it largely unavailable for charter. (Doc. 1 at ¶¶ 44-45.) On July 8, 2024, Dwoskin terminated the Agreement with Corporate Wings. (*Id.* at ¶ 45.)

B.     **Procedural History**

Dwoskin brought this action alleging Corporate Wings breached the Agreement and the inherent duty of good faith and fair dealing. (*Id.* at ¶¶ 46-53.) Corporate Wings moved to dismiss certain portions of Count One, namely any allegations Corporate Wings was contractually obligated to provide a minimum of 250 hours per year of chartered flights. (Doc. 6 at 59-60.) To it, Corporate Wings was only obligated to create an opportunity for Dwoskin "to enter into an agreement with Sentient whereby Sentient, not Corporate Wings, would guarantee the usage of 250 flight hours to Dwoskin." (*Id.* at 56.) (emphasis omitted.)

Dwoskin responded in opposition and argued two points: (1) the unambiguous terms of the Agreement obligate Corporate Wings, not Sentient, and (2) ambiguous contract terms, if any, should not be resolved on a motion to dismiss. (Doc. 8 at 69, 72.) Dwoskin argues any opportunity for a GRP Agreement with Sentient was offered in keeping with Corporate Wings' obligation to meet their 250-hour guarantee. (*Id.* at 68.) Since Corporate Wings took on the "exclusive" obligation to "market the Aircraft for charter," Corporate Wings was still obligated to make efforts to fly the Aircraft for a minimum of 250 hours annually. (Doc. 1-3 at 19.)

In its Reply, Corporate Wings also asserts the terms of the Agreement are unambiguous but presents a different read: its contractual obligation was simply to provide Dwoskin an opportunity to contract with Sentient. (Doc. 10 at 88.)

## II.     ANALYSIS

### A.     Legal Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a "complaint must present sufficient facts to 'state a claim to relief that is plausible on its face.'" *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319 (6th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

When assessing plausibility, the Court "construe[s] the complaint in the light most favorable to the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (cleaned up). But courts do not accept legal conclusions or other conclusory allegations as true. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275-76 (6th Cir. 2010)). And courts need not make unwarranted factual inferences. *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).

### B.     Breach of Contract

Under Ohio law, "the interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008) (citing *Parrett v. Am. Ship Bldg. Co.*, 990 F.2d 854, 858 (6th Cir. 1993) (applying Ohio law)). The Court must discern the parties' intent, which is "presumed to reside in the language they choose to use in their agreement." *Savedoff*, 524 F.3d at 763 (quoting *Graham v. Drydock Coal Co.*, 667 N.E.2d 949, 952 (Ohio 1996)). Contract terms are given "their plain and ordinary meaning 'unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall

contents of the instrument.'" *Laboy v. Grange Indem. Ins. Co.*, 41 N.E.3d 1224, 1227 (Ohio 2015) (citation omitted).

The language of a contract is ambiguous "only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations." *CoMa Ins. Agency, Inc. v. Safeco Ins. Co.*, 526 F. App'x 465, 468 (6th Cir. 2013) (quoting *United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 716 N.E.2d 1201, 1208 (Ohio Ct. App. 1998)); *Sec'y of USAF v. Commemorative Air Force*, 585 F.3d 895, 900 (6th Cir. 2009) ("A contract is ambiguous when it is susceptible to two or more reasonable interpretations, each of which is consistent with the contract language."). When both parties offer "plausible interpretations of the agreement drawn from the contractual language itself [this] demonstrates that the provision is ambiguous." *Int'l Union UAW Local 91 v. Park-Ohio Indus., Inc.*, 876 F.2d 894, at *6 (6th Cir. 1989) (table decision). However, a contractual term is not ambiguous "merely because two parties offer substantially different interpretations." *Glidden Co. v. Kinsella*, 386 F. App'x 535, 542 (6th Cir. 2010).

Dwoskin and Corporate Wings offer two plausible interpretations of the Agreement. To Corporate Wings, the unambiguous language guarantees the Aircraft would fly for 250 hours per year only if Dwoskin entered into a GRP Agreement with Sentient. (Doc. 10 at 84.) To Dwoskin, the Agreement unambiguously states that Corporate Wings will ensure the 250-hour flight requirement. (Doc. 1 at ¶ 5.) References to a GRP Agreement with Sentient were nothing more than an alternative, if Dwoskin selected it, to have Sentient assume the 250-hour flight requirement. (Doc. 8 at 68.) A GRP Agreement with Sentient containing different terms and no 250-hour guarantee was later executed. (Doc. 1 at ¶¶ 35-43; Doc. 1-5 at 34-36.)

Contract interpretation presents questions of fact.  As such, contract interpretation should not be resolved on a Rule 12(b)(6) motion to dismiss that presents a limited challenge to the sufficiency of the pleadings.  *Miranda v. Xavier Univ.*, 594 F. Supp. 3d 961, 971 (S.D. Ohio 2022); *Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 422 (6th Cir. 2008) ("If a contract contains ambiguities, it generally becomes the task of the fact-finder to use extrinsic evidence to determine the intent of the parties."); *DeNune v. Consol. Capital of N. Am., Inc.*, No. 3:02CV7241, 2004 WL 1474653, 2004 U.S. Dist. LEXIS 30084, at *6 (N.D. Ohio May 21, 2004) ("Contract interpretation is inappropriate for a motion to dismiss.").  As summarized above, the Agreement is susceptible to two different plausible interpretations.

### III.  CONCLUSION

For the reasons stated herein, Defendant Corporate Wings, LLC's Motion for Partial Dismissal (Doc. 6) is DENIED.

**IT IS SO ORDERED.**

**Date:**  December 3, 2025

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE